UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| NOVUS GROUP, LLC, | ) Case No. 2:19-cv-00208 |
| Plaintiff, | ) Chief Judge Edmund A. Sargus |
| v. | ) Magistrate Judge Elizabeth Preston Deavers |
| PRUDENTIAL FINANCIAL INC., ET AL., | ) |
| Defendants. | ) |

## STIPULATED ESI PROTOCOL

Plaintiff Novus Group, LLC and Defendants Prudential Financial, Inc., Prudential Insurance Company of America, Pruco Life Insurance Company, Pruco Life Insurance Company of New Jersey, Prudential Annuities, Inc., Prudential Annuities Life Assurance Corporation, and Prudential Annuities Distributors, Inc. (collectively, "the Parties"), by and through undersigned counsel, have conferred regarding the production of electronically stored information ("ESI") in their possession, custody, or control, agree to the following, and respectfully move the Court to enter this Order approving the same.

### I. GENERAL

A. As used herein, "Requesting Party" means the party requesting production of ESI. As used herein, "Producing Party" means the party that may be producing ESI in response to the request of requesting party. As used herein, the words "Party" or "Parties" include the Requesting Party and the Producing Party.

B. This Protocol applies to the ESI provisions of Fed. R. Civ. P. 16, 26, 33, 34, and 37. Insofar as it relates to ESI, this Protocol also applies to Fed. R. Civ. P. 45, if agreed to by the recipient of any discovery request issued pursuant to that rule, in all instances in which the provisions of Fed R. Civ. P. 45 are the same as, or substantially similar to, the provisions of Fed. R. Civ. P. 16, 26, 33, 34, and 37. Nothing contained herein modifies Fed. R. Civ. P. 45 and, specifically, the provision of Rule 45(d)(2)(B) regarding the effect of a written objection to inspection or copying of any or all of the designated materials or premises.

C. The Parties agree to meet and confer regarding any disputes related to the application of this Protocol. Nothing in this Protocol shall be deemed to prevent

1

any Parties from agreeing to terms different than or inconsistent with the terms of this Protocol.

D. Nothing in this Protocol shall be deemed to constitute a waiver of any objections a Producing Party may have with respect to any document request.

E. Nothing in this Protocol shall be deemed to prevent a Party from seeking the Court's intervention with respect to any issues that may arise regarding the application of this Protocol to a discovery request issued to Producing Party and/or any objections Producing Party may have with respect to any such request if the Parties are unable to resolve any such issues or objections without the Court's assistance. Likewise, nothing in this Protocol shall be deemed to prevent any other Party from opposing relief sought from the Court.

## II. SCOPE OF ESI

A. The Parties agree that Producing Party may redact: (i) personally identifiable information, including but not limited to social security numbers, birthdates, and similar kinds of information; (2) non-public personal, business, commercial, or financial information that is neither relevant nor responsive to a discovery request, the disclosure of which may cause substantial harm to a party; (3) privileged; or (4) otherwise protected from discovery. For attachments that are withheld, the Producing Party will provide a slip sheet with the basis for non-production either on the face of the document or in a data field (e.g., confidential, privilege).

B. Data Sources include, but are not limited to, email and other electronic communications such as instant messaging; information stored on devices such as desktop or laptop computers, tablets, mobile phones (e.g., text messages), digital cameras, and other portable devices; information stored on any other hardware storage devices (e.g., external hard drives, memory cards, USB or thumb drives, CDs/DVDs); discoverable information posted on any social media forum (e.g., blogs, message boards, Facebook, Instagram, LinkedIn, Twitter, MySpace, YouTube, Pinterest, or other online collaboration tools such as Google+ or Yahoo! groups); discoverable information uploaded to any cloud storage repository (e.g., DropBox, Microsoft Office365 Account, Google Drive, iCloud, Amazon Drive, etc.).

C. Data sources do not include ESI outside the possession, custody, and/or control (defined here as the legal right of the Producing Party to obtain the information) of the Producing Party.

D. Data sources do not include discovery regarding ESI that is not reasonably accessible.

2

1. An example of not reasonably accessible data includes Orphaned Data; which may include unknown or unindexed orphaned data which could be unknown or unindexed materials retained in tape, floppy disk, optical disk, or similar formats primarily for back-up or disaster recovery purposes as well as archives stored on computer servers, external hard drives, notebooks, or personal computer hard drives that are not used in the ordinary course of a party's business operations (e.g., archives created for disaster recovery purposes).

2. Accordingly, subject to the limitations of Paragraph II.D.4. below, the categories of ESI deemed not reasonably accessible or outside the scope of permissible discovery need not be preserved by the Parties. The following categories of ESI are presumed inaccessible for this litigation:

    a. Data stored in a backup system for the purpose of system recovery or information restoration, including but not limited to, disaster recovery backup tapes, continuity of operations systems, data or system mirrors or shadows;

    b. Information deemed as junk and/or irrelevant ESI outside the scope of permissible discovery in this or other matters;

    c. Server, system, or network logs, electronic data temporarily stored by applications or electronic devices;

    d. ESI collected from custodians that cannot be processed with known or available processing tools;

    e. ESI sent to or from mobile devices provided a copy of that data is readily accessible elsewhere; and

    f. ESI stored on photocopiers, scanners, and fax machines.

3. Nothing in this order shall require a party to preserve ESI that is routinely deleted or over-written in accordance with an established routine records management information governance or system maintenance practice, provided that such ESI is copied or otherwise preserved before it is deleted or overwritten.

4. Nothing in in this order shall relieve a party from their obligation to preserve ESI sources accessed in the ordinary course of business, including disaster recovery media and systems used for archival purposes where such ESI source is the unique source of that ESI. The parties shall confer regarding

3

       the scope of preservation of ESI within the scope of discovery that is inaccessible or only of limited accessibility in accordance with the procedure set forth in Paragraph II.F.

E. By June 15, 2019, the Parties agree to also exchange in writing the information listed in items (1) through (3) below. The Parties agree and understand that their respective responses are based on their knowledge and understanding as of the date of the response, and each Party agrees to amend or supplement its responses in a timely manner if it learns that in some material respect its response is incomplete or incorrect.

    1. A list of custodians (including current employees, former employees and any other individuals or companies) likely to have discoverable information, including job title and employment period for each individual to the extent that it exists and is reasonably accessible.

    2. A general description of systems for electronic communications and ESI storage ("non-custodial sources") likely to contain discoverable information (e.g. shared network storage and shared electronic work spaces). To the extent that databases are identified, the Parties will meet and confer to discuss the production of fields within the scope of permissible discovery.

    3. A description of any ESI within the scope of discovery that the Producing Party contends is inaccessible or only of limited accessibility and, hence, not producible by that Party without undue burden and/or expense, including:

        a. The reasons for the Party's contention regarding accessibility; and

        b. The proposed capture and retrieval process available (if any) for identification and/or recovery of the information deemed inaccessible (including cost estimates if readily available).

F. After a reasonable inquiry, the Parties will exchange a suggested list of sources that may be searched depending upon the scope of the document requests and the Producing Party's specific objections to certain requests.

G. Nothing in this protocol shall obligate a Party to preserve ESI outside the scope of permissible discovery under 26(b)(1).

## III. SEARCH METHODOLOGY

A. The Parties may employ an electronic search to locate relevant electronic documents. The Producing Party may use a reasonable electronic search of the electronic documents so long as such searches meet the standard of care promulgated in Rule 26(g).

B. The Parties recognize the intrinsic value of available tools to expedite review and minimize the expenses associated with e-discovery. These tools include, but are not limited to, limiting the scope of the electronic search (through the use of search terms, time frames, metadata fields, document types, and custodian limitations), predictive coding, technology-assisted review ("TAR"), de-duplication and near de-duplication, e-mail threading, date restrictions, and domain analyses. The Producing Party may deploy these tools and technological methodologies to speed up document review. Producing Parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving, searching, and producing their own ESI.

C. The Parties will discuss and attempt to reach an agreement on search methodologies with the goal of limiting the scope of review for production, minimizing the need for motion practice, and facilitating production in accordance with the deadlines set by the Court or agreed upon by the Parties. The Parties agree that there may be certain categories of relevant ESI that may not require automated searches. Nothing herein waives a Party's ability to object under Rule 34.

D. <u>Keyword Search Terms.</u>

1. If used, prior to implementing search terms against collected ESI, the Producing Party will provide a list of proposed search terms to the Requesting party.

2. The Parties will meet and confer regarding any additional terms proposed by the Requesting Party.

3. If the Parties are unable to resolve any disputes over search terms through the meet and confer process (which may include statistical sampling of disputed terms), the Parties will submit the dispute to the Court in the form of a joint discovery letter with a discussion of the relevance and/or burden associated with the search terms in dispute.

E. A Producing Party may also utilize search methodology to identify and redact certain documents and page ranges that otherwise require HIPAA redactions, redactions of personally protected information (e.g. tax identification numbers

5

or materials that would permit identity theft) or redactions pursuant to 21 C.F.R. § 314.430(e) and 21 C.F.R. § 20.63(f) for documents produced.

F. If a Party contends that the production of materials sought from one or more sources are outside the scope of Rule 26(b)(1), the Parties agree, if necessary, to meet and confer to attempt to resolve the issue. Nothing in this Protocol shall prevent a party from seeking the Court's intervention with respect to any such issue if the Parties are unable to resolve it themselves or from preventing any other Party from opposing any relief sought.

## IV. TIMING OF DISCOVERY

Discovery of ESI shall proceed in the following fashion: After receiving discovery requests and upon reaching agreement regarding the scope, the Parties shall search and review their ESI and produce responsive electronic data on a rolling basis, until such production is complete.

## V. FORMAT OF PRODUCTION

The Parties will produce ESI in accordance with the following protocol:

A. <u>Non-Database ESI.</u>

1. To the extent practicable, all non-database ESI shall be produced in TIFF format. All TIFF formatted documents will be single page, black and white, Group 4 TIFF at 300 X 300 dpi resolution and 8½ X 11 inch page size, except for documents requiring different resolution or page size. Alternatively, if color is material to the ESI, the ESI shall be produced in single-page color JPG format.

2. A unitization file, in standard format (*e.g.*, Opticon, IPRO) showing the Bates number of each page, the appropriate unitization of the documents and the entire family range, will accompany each TIFF or JPG document.

3. A delimited text file that contains agreed upon metadata fields (see paragraph VI.A.8), if those fields exist, and associated extracted (or OCR for paper-based or redacted documents) text (see paragraph VI.A.4) should also be produced and use the following delimiters:

    Field Separator, ASCII character 020: "¶"
    Quote Character, ASCII character 254 "þ"
    Multi-Entry Delimiter, ASCII character 059: ";"

    If the Producing Party requests alternate delimiters, the Parties shall agree

6

on alternate delimiters.

4. Extracted, searchable full text will be produced for each non-redacted electronic document having extractable text. Each extracted full text file will be named according to the first Bates number of the corresponding electronic document.

5. Each TIFF or JPG version of an unredacted electronic document will be created directly from the corresponding native file.

6. Unredacted spreadsheets.

    a. All unredacted spreadsheets should be produced in their native format and in the order that they were stored in the ordinary course of business, i.e., emails that attach spreadsheets should not be separated from each other and should be linked using the Attachment Range fields.

    b. The file name should match the Bates number assigned to the file.

    c. The extractable metadata and text should be produced in the same manner as other documents that originated in electronic form.

    d. A slipsheet with the words "File Produced Natively" with Bates number and Confidentiality designation shall be placed to mark where the original Native file was found in the normal course.

    e. The Parties agree to work out a future protocol governing the use and format of documents produced pursuant to paragraph V.A.6 at trial, depositions or hearings (such as converting to tiff images in accordance with paragraphs V.A.1-5).

7. Redacted spreadsheets.

    a. For redacted spreadsheet files (e.g., Microsoft Excel), TIFF or JPG versions, if produced, shall include all hidden rows, cells, worksheets as well as any headers or footers associated with the spreadsheet file.

    b. A Party may elect to produce spreadsheet files as native rather than image files. In the event that a Producing Party has native redaction capability or seeks to remove a column or row from a spreadsheet for redaction purposes, the Producing Party will identify the natively redacted spreadsheet as redacted in the associated "Redacted" metadata

field.

8. Files that cannot be converted to TIFF or JPG in a readable form shall be produced in native format in the manner described for unredacted spreadsheets in Paragraph V.A.6. Such file types include, but are not limited to, video, audio, animations, 3d drawings, hypertext markup files, executables, and similar files.

9. <u>Metadata.</u>

    a. The following metadata fields associated with each electronic document will be produced, to the extent they exist as electronic metadata associated with the original electronic documents. No Party will have the obligation to manually generate information to populate these fields.

    b. The following fields (or their nearest functional equivalents) will be produced by the Parties:

| FIELD | FORMAT | DESCRIPTION |
|---|---|---|
| BEGDOC | Fixed-Length Text | Beginning Bates number |
| ENDDOC | Fixed-Length Text | Ending Bates number |
| BEGATTACH | Fixed-Length Text | Beginning of family range, first number of first family member |
| ENDATTACH | Fixed-Length Text | End of family range, last number of last family member |
| CUSTODIAN | Single Choice | This field should be populated with the primary source or custodian from whom the document was collected. |
| ALL CUSTODIANS | Multiple Value | If global deduplication is used, this field will be populated with the custodians who also had a copy of this document or document family, but which is not being produced because of deduplication. |
| CREATION DATE TIME | Date (date:time) | Creation Date Time File System |
| SENT DATE TIME | Date (date:time) | Sent Date and Time for email |
| RECEIVED DATE TIME | Date (date:time) | Received Date and Time for email |

8

| MODIFIED DATE TIME | Date (date:time) | Last Modified Date and Time File System |
|---|---|---|
| TIME ZONE | Single Object | This field should be populated with the time zone offset in which the documents were processed and/or imaged, e.g. (UTC) Coordinated Universal Time. |
| FILEEXT | Fixed-Length Text | File Extension |
| FILENAME | Fixed-Length Text | File Name (efiles) |
| FILE SIZE | Number field | File size, in megabytes |
| AUTHOR | Fixed-Length Text | The author of the file. |
| HASHVALUE | Fixed-Length Text | Algorithmic based Hash Value generated by accepted method such as MD5 or SHA1 (or CONTROL_ID for scanned paper) |
| FILE PATH | Fixed-Length Text | Relative Path to any natively produced documents. |
| BCC | Long Text | BCC Recipient Combined |
| CC | Long Text | CC Recipient Combined |
| FROM | Fixed-Length Text | Sender Combined |
| SUBJECT | Fixed-Length Text | Subject |
| TO | Long Text | Recipient Combined |
| REDACTED | Yes or NO | Indicates whether the file has been redacted |
| PAGE COUNT | Whole Number | Page count |
| CONFIDENTIALITY | Fixed-Length Text | Confidentiality |

    c. The Parties agree that system metadata dates may or may not be accurate, but Parties will do their best to preserve accuracy of system metadata (e.g. forensics are not required).

    d. A Producing Party may withhold metadata fields for redacted documents.

9. <u>Embedded Files.</u>

    a. If a document has another responsive file embedded in it, (e.g., PowerPoint with a spreadsheet in it), the Producing Party may extract and produce the documents as a separate document and treat such documents as attachments to the document.

    b. Upon request with the applicable Bates number(s), the Requesting Party may ask the Producing Party that the embedded file be produced as a standalone file. The Producing Party shall have 10 days to produce the requested embedded files as standalone files, or respond in writing why it will not produce the requested files. If there is a dispute, the Parties will meet and confer on the objections. If the Parties are unable to agree, the

        Parties will submit the issue to the Court.

      c. A Party will have no obligation to produce any embedded file as a standalone file if the embedded file was not processed as a standalone file through the normal processes of the Producing Party's vendor.

B.   Native Files.

1. The Parties agree that documents will be produced in the imaged format as set forth in paragraph V.A and that no Requesting Party may request or seek to compel the production of ESI in native format on a wholesale basis, with the exception of spreadsheets as detailed in paragraphs V.A.6 and 7 and files that cannot be converted to TIFF or JPG as detailed in paragraph V.A.8.

2. Subsequent to the production of the imaged documents, however, and according to the following protocol, a Requesting Party may request for good cause from a Producing Party that certain imaged files be produced in native format because the files are not reasonably usable in an imaged form.

3. The Requesting Party shall provide a list of Bates numbers of the imaged documents sought to be produced in native file format. The Producing Party shall have 10 days to produce the native files previously identified as not reasonably usable, or it may object to the demand.

4. The Parties will meet and confer regarding the request and corresponding objection(s). If the Parties are unable to agree as to the production of such files in native format, the Parties will submit the issue to the Court.

C.   Production of Documents Collected as Paper. For discovery requests resulting in the collection of paper documents, the same specifications should be used as the production of ESI in paragraph V.A with the following clarifications:

1. A delimited text file that contains available fielded data should also be included and at a minimum include Beginning Bates Number, Ending Bates Number, Custodian and Page Count.

2. To the extent that documents have been run through an Optical Character Recognition (OCR) Software in the course of reviewing the documents for production, full text should also be delivered for each document. Text should be delivered on a document level in an appropriately formatted text file (.txt) that is named to match the first Bates number of the document.

3. A text cross reference load file should also be included with the production

delivery that lists the beginning Bates number of the document and the relative path to the text file for that document on the production media.

4. A Producing Party will make best efforts to unitize documents collected as paper prior to scanning. However, the Parties agree that legacy scanned documents in electronic form scanned prior to this litigation will be unitized as they are collected in the ordinary course of business.

D. Production of Databases and Other Structured Data.

1. The Parties will meet and confer to address the production and production format of any responsive data contained in a database or other structured data source. If ESI in commercial or proprietary database format can be produced in an already existing and reasonably available report form, the Parties will produce the information in such a report form, in the reasonably usable TIFF-image format described in paragraph V.A. If an existing report form is not reasonably available, the Parties will meet and confer to attempt to identify a mutually agreeable report form.

2. Nothing herein shall obligate a Producing Party to custom reporting. The Parties shall meet and confer to discuss the associated cost and proportionality of any custom reporting.

E. Other. The Parties share a desire to ensure that ESI is produced in an acceptable, searchable format. The Parties recognize that certain, limited ESI may not be amenable to the proposed technical specifications. The Parties will meet and confer in good faith to reach agreement regarding these issues and the appropriate form of production, and will seek Court intervention if necessary.

## VI. DE-DUPLICATION

A. De-Duplication and Near De-Duplication.

1. Parties may de-duplicate globally. If Parties de-duplicate globally, it is agreed that for each production, the Custodian metadata field will be provided as a multi-value field as detailed in paragraph V.A.8.b.

2. The Parties agree that an e-mail that includes content in the "bcc" or other blind copy field shall not be treated as a duplicate of an otherwise identical e-mail that does not include content in the "bcc" or other blind copy field.

3. The Parties also agree that the use of near-de-duplication protocols can reduce the cost of the review and production of ESI.

 B. E-mail Threads & Attachments.

1. Producing Party may limit e-mail review toinclusive e-mail threads, but Producing Party will produce all responsive emails.

2. If any issues arise from Producing Party's production of e-mail chains, even if not strictly production "errors," Producing Party and the Requesting Party will meet and confer in good faith to resolve or address such issues. If Producing Party and the Requesting Party cannot resolve the issue, the Parties may seek relief.

3. E-mails (with or without attachments) may be introduced into evidence as separate documents without other e-mails or attachments in the e-mail chain or with other e-mails or attachments in the chain redacted:

    a. Without an objection based on authenticity or admissibility on the grounds that the e-mails or attachments have been removed from an e-mail chain in the process of producing ESI; and

    b. Without prejudice to an objection based on Federal Rule of Evidence (FRE) 106 that additional documents or e-mails should be admitted in evidence as the remainder of or related writings or statements.

The Parties reserve all other objections to the relevance, authenticity or admissibility of ESI.

## VII. PRIVILEGE AND REDACTIONS

 A. Redactions.

1. A Producing Party may redact ESI that the Producing Party claims is subject to attorney client privilege, work product protection, contains information that relates to other confidential business, commercial or financial information, or any ESI for which there is a legal prohibition against disclosure.

2. The Producing Party shall mark each redaction with the bases for each redaction (e.g., confidential, privilege).

3. The Producing Party shall preserve an un-redacted version of the item.

B. <u>Claims of Privilege and Privilege Log.</u>

1. The Producing Party must furnish a log of all documents withheld from production on the basis of attorney-client or work-product privilege ("Privilege Log") within a mutually agreed upon time frame after the final production of documents.

2. Consistent with Fed. R. Civ. P. 26(b)(5), the Producing Party's Privilege Log will contain the following information:

    a. Date of document or communication (including month, day, and year)
    b. Type of document
    c. Author of document
    d. Sender of document (if different from author), including email address
    e. Recipient names (including email addresses)
    f. CC names (including email addresses)
    g. BCC names (including email addresses)
    h. Bates range of the privileged documents, if applicable (e.g., for produced documents with privileged information redacted)
    i. Indication of the privilege
    j. If produced, family member designation within the production
    k. A description of the subject matter of the document or communication with information sufficient to demonstrate the existence of a privilege

3. A Party need only log the topmost e-mail in a thread so long as the description of the subject matter includes enough information sufficient to demonstrate the privilege.

4. To the extent available, individuals should be identified with enough information to identify why the privilege attaches, such as name and job title or other justification for assertion of privilege.

5. If the Requesting Party objects to a document (or part of it) being withheld or redacted as privileged, it shall meet and confer with the Producing Party. Should the Parties not be able to agree to a resolution of the dispute, the Requesting Party shall submit the dispute to the Court.

13

## VIII. COSTS

The Parties agree that the Producing Party bears the burden of discovery costs absent agreement or court order pursuant to Rule 26(c)(1)(B).

SO ORDERED: _____

Agreed to by:

/s/ Gerhardt A. Gosnell II (via phone authorization 5.15.19)
James E. Arnold (OH 0037712)
Trial Attorney
Gerhardt A. Gosnell II (OH 0064919)
JAMES E. ARNOLD & ASSOCIATES, LPA
115 W. Main St., Fourth Floor
Columbus, Ohio 43215
(614) 460-1600 (telephone)
jarnold@arnlaw.com
ggosnell@arnlaw.com

/s/ Rachael L. Rodman
Rachael L. Rodman (0073872)
Trial Attorney
ULMER AND BERNE, LLP
65 East State Street, Suite 1100
Columbus, Ohio 43215
614.229.0038 (telephone)
614.229.0039 (facsimile)
rrodman@ulmer.com

Michael N. Ungar (0016989)
ULMER & BERNE LLP
Skylight Office Tower
1660 West Second Street, Suite 1100
Cleveland, OH 44113
Tel: (216) 583-7000
Fax: (216) 583-7001
mungar@ulmer.com

Michael P. Sandonato (*pro hac vice*)
Christopher P. Borello (*pro hac vice*)
Joshua D. Calabro (*pro hac vice*)
VENABLE LLP
1290 Avenue of the Americas, 20th Floor
New York, NY 10104
212.218.2100 (telephone)
212.218.2200 (facsimile)
msandonato@venable.com
cborello@venable.com
jdcalabro@venable.com