UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

NOVUS GROUP, LLC,

**Plaintiff,**

v.

PRUDENTIAL
FINANCIAL, INC, *et al.*,

**Defendants.**

Case No. 2:19-cv-208
JUDGE EDMUND A. SARGUS, JR.
Chief Magistrate Judge Elizabeth P. Deavers

## OPINION AND ORDER

This matter is before the Court on the *Motion to Dismiss* (ECF No. 24) filed by Defendants Pruco Life Insurance Company, Pruco Life Insurance Company of New Jersey, Prudential Annuities Distributors, Inc., Prudential Annuities Life Assurance Corporation, Prudential Annuities, Inc. ("Prudential Annuities"), Prudential Financial Inc., and Prudential Insurance Company of America (collectively "Prudential"). Plaintiff Novus Group, LLC ("Novus") filed a *Response in Opposition* (ECF No. 32), and Prudential filed a *Reply* (ECF No. 33). Therefore, this matter is ripe for review. For the reasons stated below, the Court **GRANTS in PART** and **DENIES in PART** Prudential's *Motion to Dismiss*. (ECF No. 24.)

### I. BACKGROUND

#### A. The Alleged Trade Secret

In 2013, two men who collectively shared over 30 years of experience in the annuity industry founded Novus specifically to design and develop an innovative annuity product. Novus named that product the Transitions Beneficiary Income Rider (the "TBIR"), which it created in response to the market's growing desire for retirees to responsibly transfer their accumulated

wealth to fund the following generation's retirement income. Novus recognized that retirees' income security was generally well-funded but that the working population faced a retirement income deficiency due to a lack of retirement savings and the decline of traditional benefit retirement pension programs. As a solution to this problem, Novus created the TBIR.

Novus asserts that the TBIR combined five features to create a wholly unique annuity product. First, the TBIR utilized a guaranteed minimum death benefit ("GMDB"), which set the death benefit amount at a predetermined annual rate (the "roll-up rate"). Novus claims the GMDB's structure was unique for several reasons. For one, it used simple interest, which is more predictable than often-utilized market growth and therefore reduces exposure to risk and management costs. The TBIR's GMDB also used a roll-up rate that could only accrue over a single owner's lifetime, as opposed to multiple owners' lifetimes (*e.g.*, continuing to accrue through the surviving spouse). This shorter accrual period further reduced risk and maintenance costs. Additionally, the TBIR structured the GMDB to prohibit owners from making lifetime withdrawals against the TBIR's insured value, thereby ensuring financial predictability and reducing risk.

Novus asserts that the TBIR's second unique feature was its beneficiary structure. Novus designed the TBIR specifically for non-spousal beneficiaries, such as the owner's child or grandchild. Since the owner's children and grandchildren would presumably survive the owner's spouse, the TBIR's beneficiaries had life expectancies and corresponding payout periods that were significantly longer than annuities with spousal beneficiaries. With longer payout periods and therefore smaller payments, the TBIR provided significant tax advantages.

Third, Novus designed the TBIR to deposit beneficiaries' death benefit proceeds in monthly installments, which were calculated using the beneficiaries' life expectancies. This

payment structure was unique because annuities often distribute insured death benefit proceeds as a lumpsum. Again, the smaller monthly payments minimized taxes.

Fourth, Novus avers that it designed the TBIR for compatibility with qualified and non-qualified annuity contracts. Qualified annuity contracts are those funded with money originating from a tax-deferred retirement account. Non-qualified annuity contracts are funded by after-tax dollars. According to Novus, this flexibility was unique and valuable.

Fifth, Novus designed and promoted the TBIR as a product that only natural persons could purchase. This ownership structure satisfied a common requirement by most insurance carriers in order to permit life-expectancy-based payout options to the beneficiaries of non-qualified annuity contracts. By broadening the TBIR's compatibility with various annuity contracts, Novus expanded its potential market.

In sum, Novus asserts that the TBIR's unique combination of the simple-interest GMDB that accrues over one owner's lifetime and bars any living benefits to the owner, combined with product-specific marketing materials promoting a life-expectancy-based payout to the non-spouse beneficiary, created a more predictable, less risky actuarial position for the carrier. As a result, Novus claims, the carrier could price and market the TBIR with higher roll-up rates. In other words, the TBIR could obtain a guaranteed death benefit that was higher "than typically available in the then-existing competitive annuity market." *Id.* at ¶ 22.

Novus also developed the TBIR's marketing materials (collectively with the TBIR, the "TBIR Information"). Novus's two members expended hundreds of hours of work and thousands of dollars developing the TBIR Information. They planned to sell or assign the TBIR Information to insurance carriers, which would then offer the TBIR as a product within their portfolios.

3

**B. The Alleged Misappropriation**

After developing the TBIR Information, Novus approached Genesis Financial Development, Inc. ("Genesis") in 2013 to assess the TBIR's actuarial soundness in late 2013. After Novus and Genesis executed a nondisclosure agreement, Genesis analyzed the TBIR and wrote a confidential memorandum that described the TBIR[1] (the "Genesis Memo"). According to Novus, the Genesis Memo identified insurance benefits that the TBIR would offer to the annuity market.

Around this time, Novus also partnered with Annexus Group ("Annexus"), which had previously assisted Nationwide Life Insurance Company ("Nationwide") with developing and distributing annuity products. Novus avers that Annexus and Nationwide were parties to a mutual confidentiality and nondisclosure agreement (the "Annexus/Nationwide NDA"). Novus asserts that the TBIR Information constituted "confidential information" under the Annexus/Nationwide NDA. Novus hired Annexus to present the TBIR Information to Nationwide. To that end, in February 2014, Novus and Annexus executed a Marketing & Training Agreement (the "Annexus Agreement"), which "contained strict confidentiality requirements." Pl.'s Am. Compl. at ¶ 31. Under the Annexus Agreement, Annexus would present the TBIR Information to Nationwide and other carriers with the goal of those carriers offering the TBIR in their annuity portfolios. If that happened, Novus would receive payments based on the dollar value of sales and annual account values of the annuities that used the TBIR.

In June 2014, Annexus presented the TBIR Information to Nationwide, including Nationwide's Vice President of Business Development of Annuity Products, Michael Morrone ("Morrone"). In that role, Morrone reported directly to Rodney Branch ("Branch") and supervised Lisa Ferris ("Ferris"). At the time, Branch was Nationwide's Vice President of Annuity Products,

---

[1] When Genesis drafted this memo, the TBIR was called the "TER." For clarity and consistency purposes, the Court will refer to Novus's product only as the TBIR.

Innovation and Business Leader, and Ferris was Product Director of Nationwide's Annuity Product Group. According to Novus, "Branch and Ferris were privy to and part of the Nationwide team to evaluate all new annuity-related product concepts presented to Nationwide, including from Annexus." *Id.* at ¶ 36. Based on this, Novus alleges that, "[u]pon information and belief, the TBIR Information was shared with Branch and/or Ferris in their positions as employees and agents of Nationwide and within the course and scope of their employment with Nationwide." Pl.'s Am. Compl. at ¶ 37. Novus also asserts that "Branch and/or Ferris reviewed the TBIR Information and had the information in their possession while employed by Nationwide." *Id.* Nationwide ultimately chose not to issue the TBIR as a part of its annuity product portfolio.

In June 2015, Branch left Nationwide and joined Prudential Annuities as its Chief Marketing Officer. According to Novus, at that time "Prudential was seeking to shift current and future clients into products that would reduce Prudential's obligations to pay a living benefit to the annuity contract owner...." *Id.* at ¶ 41. In March 2016, Prudential promoted Branch to Head of Product and Chief Marketing Officer. In that role, Branch led the development and product pricing for Prudential's new annuity products. In June 2016, Ferris left Nationwide and joined Prudential Annuities as Director of Product Marketing and Strategic Initiatives and Integration. *Id.* at ¶ 40.

Novus asserts that—consistent with Prudential's goals, the job responsibilities of Branch and Ferris, and their knowledge of the TBIR Information—Prudential misappropriated Novus's TBIR Information in May 2017, when Prudential began marketing and selling an optional death benefit rider to a retirement annuity. *Id.* at ¶ 42. Prudential named this product the "Legacy Protection Plus." Novus claims that "[w]hile the name may be different, Prudential's Legacy Protection Plus optional death benefit rider is identical to the TBIR and its marketing materials developed by Novus." *Id.* at ¶ 43. According to Novus, like the TBIR, the Legacy Protection Plus:

- provides the owner with a single-growth mechanism GMDB guaranteed to grow at a predetermined annual simple-interest roll-up rate, to accrue over one owner's lifetime payable upon death of that owner, which cannot be accessed by the owner to fund guaranteed lifetime withdrawals;

- allows, and is marketed and promoted to allow, the selection of a non-spouse beneficiary, typically a child or grandchild, of the original owner;

- allows, and is marketed and promoted to allow, the contract owner to mandate that the insured death benefit will be paid to the non-spouse beneficiary in a predetermined manner through a range of life-expectancy based payout options rather than the typical lump-sum method;

- is compatible for use with both qualified and non-qualified annuity contracts;

- is promoted to serve a contract owner who is a natural person; and

- is marketed with a wealth transfer theme, under which an annuity owner could "protect" and "grow" a guaranteed legacy death benefit and "control" the payment of the death benefit by encouraging the owner to mandate that the annuity death benefit proceeds be distributed through a life-expectancy based payout structure with the specific purpose of creating retirement income for the next generation.

*Id.* at ¶ 43.

Novus claims that Branch and Ferris obtained the TBIR Information while working at Nationwide and then shared it with Prudential, in violation of the Annexus/Nationwide NDA and their own confidentiality agreements with Nationwide. Further, Novus alleges that Prudential is vicariously liable for the actions of Branch and Ferris.

In its Amended Complaint, Novus asserts three counts against Defendants: (1) misappropriation under the Uniform Trade Secrets Act (the "UTSA")[2], (2) unjust enrichment

---

[2] Novus alleges UTSA claims under the Ohio, New Jersey, and Connecticut versions of the UTSA. Defendants primarily analyze the misappropriation claims under the Ohio Revised Code §§ 1333.61 to 1333.69 (the "OUTSA"), but the UTSA statutes in New Jersey and Connecticut are nearly identical. *See* N.D. Rev. Stat. §§ 56:15-1 to 56:15-9 (2013); *see also* Conn. Gen. Stat. §§ 35-50 to 35-58 (2011). There is, however, a substantive difference in the New Jersey UTSA. The Court addresses this difference *infra*.

under New Jersey law, and (3) conversion under New Jersey law. Prudential moves this Court to dismiss all three counts, arguing that Novus has failed to adequately state a claim.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a cause of action for "failure to state a claim upon which relief can be granted." Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005). Therefore, the Court must construe the complaint in the light most favorable to the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Generally, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiff need not allege detailed facts but must "give the defendant fair notice of what the claim is, and the grounds upon which it rests." *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). In short, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). It must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

## III. TRADE SECRET MISAPPROPRIATION CLAIM

To prevail on an OUTSA claim, a plaintiff must establish the following: (1) the existence of a trade secret; (2) the acquisition of the trade secret as a result of a confidential relationship; and (3) the unauthorized use of the trade secret. *Heartland Home Fin., Inc. v. Allied Home Mortg. Capital Corp.*, 258 F. App'x 860, 861 (6th Cir. 2008) (citation omitted).

7

**1. Has Novus Sufficiently Pled that a Trade Secret Exists?**

First, Novus must establish that the TBIR Information is a trade secret. The OUTSA

defines "trade secret," as follows:

> [I]nformation, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following:
>
> > (1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
> >
> > (2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Ohio Rev. Code § 1333.61(D). Interpreting this statute, the Supreme Court of Ohio has adopted

six factors for courts to consider when determining whether an item constitutes a trade secret:

> (1) The extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business, *i.e.*, by the employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of information; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information.

*State ex rel. The Plain Dealer v. Ohio Dep't of Ins.*, 80 Ohio St. 3d 513, 524–25, 687 N.E.2d 661,

672 (1997). The question of "whether information constitutes a trade secret is a highly fact-specific

inquiry." *Wellington Res. Grp. LLC v. Beck Energy Corp.*, No. 2:12-cv-104, 2013 WL 5325911,

at *5 (S.D. Ohio Sept. 20, 2013). Therefore, "[c]onclusory statements as to trade secret factors

without supporting factual evidence are insufficient to meet the burden of establishing trade secret

status." *Arnos v. MedCorp., Inc.*, No. L-09-1248, 2010 WL 1730139, at *3 (Ohio Ct. App. Apr.

30, 2010) (citations omitted).

Although the Supreme Court of Ohio has never found any one factor dispositive, it has emphasized that "[a] business or possessor of a potential trade secret must take some active steps to maintain its secrecy in order to enjoy presumptive trade secret status." *State ex rel. The Plain Dealer*, 687 N.E.2d at 672. That is because "once material is publicly disclosed, it loses any status it ever had as a trade secret." *State ex rel. Rea v. Ohio Dep't of Educ.*, 82 Ohio St. 3d 527, 692 N.E.2d 596, 601 (1998) (citing *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984)). Thus, Novus must demonstrate that the TBIR Information falls into one of the statutory categories of protected information and that Novus took some active steps to maintain the TBIR Information's secrecy. *State ex rel. Besser v. Ohio State Univ.*, 89 Ohio St. 3d 396, 732 N.E.2d 373, 378 (2008).

Turning to the *Plain Dealer* test, Prudential asserts that the Amended Complaint is silent regarding the second and sixth *Plain Dealer* factors and only provides conclusory statements for the first and fifth factors. Defs.' Mot. to Dismiss at 9. The Court disagrees and, for the reasons stated below, concludes that Novus has pled facts that show the TBIR Information is a trade secret.

a. Factor 1: The Extent to Which the TBIR Information Was Known Outside the Business.

Prudential asserts that Novus failed to satisfy the first *Plain Dealer* factor because Novus did not plead "facts to support a claim that the TBIR Information was not generally known in the insurance industry...." Defs.' Reply at 4. The Court disagrees.

In its Amended Complaint, Novus asserts that "the TBIR contained five key features that, in combination, were wholly unique to the then-existing market." Pl.'s Am. Compl. at ¶¶ 16, 25. Novus also claims that it developed the TBIR Information alone and did not disclose anything to third parties without strict confidentiality agreements protecting the information. *Id.* at ¶ 24. Additionally, Novus avers that the TBIR Information was not known to others in the annuity industry. Pl.'s Compl. at ¶ 15 ("the annuity industry lacked such a product at the time."); *id.* at ¶

9

24; *id.* at ¶ 25 ("The TBIR product design was not known to exist and did not exist in the then-existing annuity market"). Therefore, Novus has established the first *Plain Dealer* factor.

b. Factor 2: The Extent to Which the TBIR Information is Known to Those Inside the Business.

Next, Prudential argues that Novus's Amended Complaint is silent regarding the second *Plain Dealer* factor, which asks whether the information was well-known by those within the company. While Novus does not explain the extent to which its members knew about the TBIR Information, Novus does assert that its members founded the company solely to develop the TBIR Information. It follows then that every Novus member knew about the TBIR Information. But because Novus only had two members and therefore only two people in the entire industry knew about the TBIR Information, this factor suggests that the TBIR Information is a trade secret.

c. Factor 3: The Precautions Taken by Novus to Guard the TBIR Information's Secrecy.

The third *Plain Dealer* factor questions whether Novus adequately protected the TBIR's confidentiality. Prudential argues that Novus failed to take reasonable steps to keep the TBIR Information secret. The Court disagrees. According to the Amended Complaint, Novus required all third parties to execute confidentiality agreements before sharing the TBIR Information. *Id.* at ¶¶ 26, 31, 34. To that end, Novus's TBIR Information was protected by a confidentiality agreement with Genesis, one with Annexus, and another—by way of Annexus—with Nationwide. Because Novus only shared the TBIR Information with those three duty-bound parties, Novus took reasonable steps to protect the TBIR Information's secrecy. Therefore, Novus has satisfied the third *Plain Dealer* factor.

d. Factor 4: The Savings and Value to Novus in Having the Information as Against Competitors.

The fourth *Plain Dealer* factor requires a plaintiff to plead facts that show the TBIR Information "derives independent economic value, [whether] actual or potential, from not being

10

generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use." Ohio Rev. Code § 1333.61(D). Prudential asserts that Novus has failed to plead facts establishing that the *secrecy* of the TBIR Information provided independent economic value to Novus. In response, Novus argues that the TBIR Information's secrecy was valuable because, until the product reached the marketplace and was therefore disclosed to the public, Novus was able to exclusively offer its novel product to insurance carriers. The Court agrees.

Taking Novus's allegations as true, there was market demand for the TBIR. And, by developing and keeping the TBIR secret, Novus had exclusive rights over the TBIR. Since exclusive rights over a sought-after product are valuable, so is whatever secures those rights. Here, the TBIR's secrecy secured Novus's exclusive rights over the TBIR. Therefore, the secrecy of the TBIR was valuable to Novus. Accordingly, Novus has satisfied the fourth *Plain Dealer* factor.

e. Factor 5: The Amount of Resources Expended in Obtaining and Developing the TBIR.

Novus has also satisfied the fifth *Plain Dealer* factor, which asks whether the plaintiff expended resources to obtain the alleged trade secret. Novus claims that its experienced members spent hundreds of hours of work and thousands of dollars to develop the TBIR Information. Pl.'s Am. Compl. at ¶ 24. This satisfies the fifth *Plain Dealer* factor.

f. Factor 6: The Time and Expense Required for Others to Acquire and Duplicate the Information.

The sixth *Plain Dealer* factor overlaps with the fifth since the amounts of time and resources that Novus spent developing the TBIR Information are presumably the same amounts that another business would have to expend in order to duplicate that information. And because Novus spent significant amounts of resources, so too would others. Therefore, Novus has satisfied

11

the sixth factor. Accordingly, Novus has adequately pled facts that establish the TBIR Information is a trade secret under Ohio law.

Nevertheless, Prudential argues that this case is analogous to *Murray Energy Holdings Co. v. Bloomberg, L.P.*, No. 2:15-cv-2845, 2016 WL 3355456, at \*6 (S.D. Ohio June 17, 2016). In *Murray Energy*, this Court dismissed the plaintiff's trade secret misappropriation claim for failing to establish that its financial data constituted trade secrets under Ohio law. *Id.* at \*6–9. The plaintiff's allegations were deficient for several reasons. First, the plaintiff's financial data was not information about operations or processes, pricing methods, or business plans, as required by Ohio Revised Code § 1333.61(D). Second, the financial data was "merely momentary or ephemeral" information that the plaintiff routinely calculated and that quickly became stale. *Id.* at \*7. Third, the plaintiff often disclosed its financial data to potential lenders and investors, sometimes without requiring them to execute confidentiality agreements. *Id.* at \*8–9. And, most critically, the plaintiff's complaint amounted to "legal conclusions couched as factual allegations." *Id.* at \*6 (citing *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009)).

In the case *sub judice*, Novus's Amended Complaint did not contain any of the deficiencies found in *Murray Energy*. As discussed *supra*, Novus has sufficiently alleged that the TBIR Information is a product and business plan that Novus took reasonable steps to keep secret. The TBIR was not momentary information that quickly became stale. And Novus did not routinely disclose the TBIR Information to third parties. Moreover, Novus alleged facts rather than mere legal conclusions. Therefore, *Murray Energy* is inapposite.

In conclusion, Novus has satisfied all the *Plain Dealer* factors and therefore established that the TBIR Information is a trade secret under Ohio law. Thus, Novus has demonstrated the first element of its trade secret misappropriation claim.

**2. Has Novus Sufficiently Alleged that Prudential Acquired the TBIR Information as a Result of a Confidential Relationship?**

The second element requires Novus to establish that Prudential acquired the TBIR Information as a result of a confidential relationship. The OUTSA does not define "confidential relationship." So instead, courts determine whether the plaintiff took reasonable steps to protect and maintain the information's secrecy. *Apex Tool Group, LLC v. DMTCO, LLC*, No. 3:13-cv-372, 2014 WL 6748344, at *14 (S.D. Ohio Nov. 26, 2014) (citing *Niemi v. NHK Spring Co., Ltd.*, 543 F.3d 294, 302 (6th Cir. 2008)).

As discussed *supra*, Novus claims that it only shared the TBIR Information with Genesis, Annexus, and Nationwide, each of which was bound by a separate confidentiality agreement. Further, Novus asserts that those agreements protected the TBIR Information. Novus also claims that Branch and Ferris acquired the TBIR Information based on their employment at Nationwide. So, Prudential—via Branch and Ferris—acquired the TBIR Information as a result of a business relationship that was protected by a confidentiality agreement. Therefore, Novus took reasonable steps to protect the TBIR Information, and Prudential acquired the TBIR Information as a result of a confidential relationship. Accordingly, Novus has satisfied the second element.

**3. Has Novus Sufficiently Alleged Prudential Misappropriated the TBIR Information?**

To satisfy the third and final element of its trade secret misappropriation claim, Novus must allege facts that show Prudential misappropriated the TBIR Information. The OUTSA defines "misappropriation" to include:

> [d]isclosure or use of a trade secret of another without the express or implied consent of the other person by a person who ... [a]t the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret ... was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or was derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use ....

13

Ohio Rev. Code § 1333.61(B)(2).

Novus alleges "[u]pon information and belief, the TBIR Information was shared with Branch and/or Ferris in their positions as employees and agents of Nationwide and within the course and scope of their employment with Nationwide." Pl.'s Am Compl. at ¶ 37. Novus also claims that "Branch and/or Ferris reviewed the TBIR Information and had the information in their possession while employed by Nationwide." *Id.* Novus then alleges that "[u]pon information and belief, Branch and Ferris took the TBIR Information that they obtained during their employment with Nationwide with them to Prudential and ultimately shared the TBIR Information with Prudential, all in violation of the Annexus/Nationwide NDA, and … in violation of Branch and Ferris' own confidentiality agreements with Nationwide." *Id.* at ¶ 44. Finally, Novus claims that, "[u]pon information and belief, Prudential knowingly used, misappropriated, and/or converted the TBIR Information that Prudential obtained from Branch and Ferris to develop, issue, market, and sell the Legacy Protection Plus optional death benefit for its own use." *Id.* at ¶ 45. To bolster this claim, Novus lists the TBIR Information's key features that Prudential's Legacy Protection Plus also uses. *Id.* at ¶ 43.

In response, Prudential argues that "[i]n attempting to establish that Defendants had access to the TBIR Information, Novus invents an entirely speculative chain of events, which it alleges 'upon information and belief.'" Defs.' Reply at 6. According to Prudential, Novus's information and belief pleadings are inappropriate. The Court disagrees.

"Although there is no express authorization in the federal rules for pleading on information and belief, allegations in this form have been held to be permissible," and are even "a practical necessity." Wright & Miller, 5 Fed. Prac. & Proc. Civ. § 1224 (3d 2019). "How else can a pleader avoid the appearance of perjury when he is without direct personal knowledge regarding one or

14

more of the allegations necessary to his claim and therefore must plead on a less certain footing?" *Id.* Recognizing the necessity of this practice, the Sixth Circuit permits pleading on information and belief in certain circumstances, such as when a plaintiff may lack personal knowledge of a fact but have sufficient data to justify interposing an allegation. *Starkey v. JPMorgan Chase Bank, NA,* 573 Fed. Appx. 444, 447–48 (6th Cir. 2014) (citation omitted). Therefore, pleading on information and belief is allowed "where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible." *Id.* If the matter is within the personal knowledge of the pleader, however, this form of pleading is inappropriate. *Id.*

Prudential argues that Novus cannot plead on information and belief because only Novus controls the facts regarding whether Branch and Ferris accessed the TBIR Information and whether Prudential subsequently used that information. The Court disagrees. Only Branch, Ferris, and whoever allegedly disclosed the TBIR Information to them could have knowledge about that disclosure. Similarly, only Branch, Ferris, and those individuals on Prudential's annuity product development team could possibly know whether Prudential used the TBIR Information to create Prudential's Legacy Protection Plus. Therefore, because only Branch, Ferris, and other Prudential employees could know about the alleged misappropriation, Novus properly pled upon information and belief.

Next, Prudential takes issue with Novus essentially admitting that it has no direct evidence to show Branch or Ferris accessed the TBIR Information or that Prudential used that information to develop its own product. *See* Defs.' Mot. to Dismiss at 10. But Novus's lack of direct evidence is not fatal to its misappropriation claim. In fact, a plaintiff must often rely on circumstantial evidence when prosecuting a trade secret claim because "misappropriation and misuse can rarely

15

be proved by convincing direct evidence." *Stratienko v. Cordis Corp.*, 429 F.3d 592, 600 (6th Cir. 2005) (citations omitted). That is why the Sixth Circuit has permitted plaintiffs to prove misappropriation with circumstantial evidence that demonstrates defendants' access to a trade secret and subsequent design similarities. *Id.* at 600–01 ("Presented with defendants' witnesses who directly deny everything, plaintiffs are often required to construct a web of perhaps ambiguous circumstantial evidence from which the trier of fact may draw inferences which convince him that it is more probable than not that what the plaintiffs allege happened did in fact take place.") (citation and quotation marks omitted); *see also Brake Parts, Inc. v. Lewis*, 443 Fed. Appx. 27, 31 (6th Cir. 2011). "In other words, pointing to the defendant's development of a similar product, after exposure to secrets, is another classic avenue of proof." *Wilson v. Hasbro, Inc.*, No. 3:05-cv-457, 2009 WL 860355, at *3 (W.D. Ky. Mar. 30, 2009) (citation omitted); *see also Apex Tool Group, LLC*, 2014 WL 6748344, at *15 (applying *Stratienko* to analyze a motion to dismiss involving a misappropriation claim arising under Ohio law.)

Therefore, the Court finds that the aforementioned "information and belief" allegations, together with the well-pled allegations regarding Prudential's access to and use of the TBIR Information, plausibly support the inference that Prudential, with the assistance of Branch and Ferris, misappropriated Novus's TBIR Information. First, Novus claims that Ferris and Branch accessed the TBIR Information through their previous jobs with Nationwide. Novus also alleges that Branch and Ferris disclosed the TBIR Information to Prudential, which then used that information without Novus's consent. Additionally, Novus claims that Prudential knew or had reason to know that—when Branch or Ferris disclosed the TBIR Information to Prudential and when Prudential used the information—Branch and Ferris had been required to maintain the TBIR Information's secrecy and limit its use. Finally, Novus asserts that Prudential knew or should have

16

known that Branch and Ferris learned about the TBIR Information from Morrone, who owed duties of confidentiality to Annexus and Novus. Accordingly, Novus adequately alleged that Prudential misappropriated the TBIR Information.

In conclusion, the Court finds Novus's Amended Complaint sets forth facts that, if true, demonstrate that: the TBIR Information is a trade secret, Branch and Ferris accessed the TBIR Information as a result of a confidential relationship, and Prudential misappropriated the TBIR Information. Thus, Novus has adequately pled its trade secret misappropriation claim against Prudential. Accordingly, the Court **DENIES** Prudential's Motion to Dismiss regarding this claim.

## IV. UNJUST ENRICHMENT AND CONVERSION CLAIMS

In its Amended Complaint, Novus asserts unjust enrichment and conversion claims under New Jersey law "conditionally and solely to the extent that the Court determines" that New Jersey law governs its misappropriation claim. (Pl.'s Am. Compl. at ¶ 15 n.2). Because Ohio law applies to Novus's misappropriation claim, Novus's unjust enrichment and conversion claims fail.

"A court must conduct conflict of laws analysis only if there is an actual conflict between local law and the law of another jurisdiction." *Miami Valley Mobile Health Servs., Inc. v. ExamOne Worldwide, Inc.*, 852 F. Supp. 2d 925, 937 (S.D. Ohio 2012). "If there is no conflict, Ohio law is to be applied." *Id.* (citation omitted). If there is a conflict, the court must resolve the issue in accordance with the Restatement of the Law of Conflicts. *Morgan v. Biro Mfg. Co., Inc.*, 15 Ohio St. 3d 339, 341–42 (1984). The parties agree that the trade secret misappropriation statutes of Ohio and New Jersey conflict. The New Jersey UTSA does not preempt conflicting state law claims, such as unjust enrichment and conversion; the OUTSA does. Therefore, the Court must determine which state's law applies in accordance with the Second Restatement of the Law of Conflicts.

The Second Restatement explains that tort claims are generally governed by the law of the place of injury, unless another state has a more significant relationship to the lawsuit. *Restatement (2d) of Conflict of Laws* § 145 (1971). There is no doubt the place of injury is Ohio. Novus is an Ohio company, its members are Ohio residents, Novus developed the TBIR Information in Ohio, and Novus alleges that the events giving rise to this lawsuit occurred in Ohio. *See generally* Pl.'s Am. Compl. Therefore, Ohio law applies unless New Jersey has a more significant relationship to this lawsuit.

In determining which state has the most significant relationship to a case, courts must consider the following factors: (i) the place of injury; (ii) the place where the conduct causing the injury occurred; (iii) the domicile, place of incorporation, and place of business of the parties; and (iv) where the relationship between the parties is located. *Morgan*, 747 N.E.2d at 289 (citing *Restatement (2d) of Conflict of Laws* §§ 145, 146 (1971)).

These factors favor Ohio as the state with the most significant relationship. As discussed *supra*, the first factor—the place of injury—is Ohio. The second factor is less clear. It asks where the conduct causing the injury occurred. While Novus alleges that Annexus presented the TBIR Information to Nationwide in Ohio, Novus acknowledges that it is unclear when and where Branch or Ferris learned about the TBIR. Further, without any headquarters or primary places of business in Ohio, Prudential's alleged misappropriation of the TBIR Information likely occurred elsewhere. Without knowledge about where Prudential allegedly accessed or misappropriated the TBIR, this factor does not favor any state.

The third factor—where the parties are located—is also a wash. Novus is incorporated and conducts business in Ohio, but the Prudential shares those same ties with New Jersey, Arizona, Connecticut, and Delaware. *See* Pl.'s Am. Compl. at ¶¶ 2–8. The fourth and final factor asks where

the relationship between the parties is located. This factor favors Ohio. The only established relationship between the parties is this lawsuit, which Novus filed in Ohio.

In conclusion, Ohio law applies because Ohio is the place of injury and no other state has a more significant relationship to this lawsuit. Accordingly, The Court **GRANTS** Prudential's Motion to Dismiss regarding Novus's claims for unjust enrichment and conversion.

## V. CONCLUSION

For the reasons state above, the Court **GRANTS in PART** and **DENIES in PART** Prudential's *Motion to Dismiss*. (ECF No. 24.) The Court **DISMISSES** Novus's conditional claims for unjust enrichment and conversion arising under New Jersey law.

**IT IS SO ORDERED.**

9-17-2019
_____
**DATE**

_____
**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**